# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ANDREW J. SERRANO,

        Plaintiff,

vs.                                                                  No. CIV 04-0575 JB/DJS

ANN M. VENEMAN, Secretary
United States Department of Agriculture,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion for Summary Judgment,

filed August 31, 2005 (Doc. 21). The primary issue is whether the Defendant has demonstrated that

there is no genuine issue of material fact on any of Plaintiff Andrew J. Serrano's claims and whether

the Defendant is entitled to a judgment as a matter of law. The Court held a hearing on this matter

on October 20, 2005. Because the Court finds that the Defendant has shown that there is no genuine

issue of material fact as to any of Serrano's claims and that the Defendant is entitled to judgment as

a matter of law, the Court will grant the Defendant's Motion for Summary Judgment.

## FACTUAL BACKGROUND

In 1982, Serrano began his career with the United States Forest Service ("USFS"), as a GS-3

Forestry Aide. See Affidavit of Andrew Serrano ("Serrano Aff.") ¶ 2, at 1 (executed September 23,

2005). Fire-fighting was his primary duty. See id. Serrano gained experience with controlled burns,

wildfire suppression, forest thinning and other pre-suppression activities, marking trees, trail work,

and recreational area maintenance. See id. Serrano is now certified as a Type I "Burn Boss" -- one

of only 3 or 4 on the Santa Fe National Forest. See id. A Type I Burn Boss is a firefighter who is

eligible to supervise others in controlled burn situations as well as in combating wildfires.  See id.

At the time of the events giving rise to Serrano's action, the USFS employed him as Fuels Management Technician, GS-7.  See Complaint ¶ 2, at 1, filed May 21, 2004 (Doc. 1).  Serrano's immediate supervisor was Kevin Joseph, Fire Management Officer ("FMO"), Española Ranger District.  See Deposition of Andrew Serrano ("Serrano Depo.") at 106:23-24 (taken June 20, 2005). Leonard Atencio was the Forest Supervisor and Robert Leaverton served as his Deputy.  See id. at 40:7-11.[1]

### 1.  Prior EEO Activity.

According to Michael Matarrese, Fire and Aviation Staff Officer, Santa Fe National Forest, a female USFS employee approached him in 1998 and complained about Serrano's behavior.  See Declaration of Michael T. Matarrese ("Matarrese Decl.") ¶ 10, at 2-3 (executed August 25, 2005). She informed Matarrese that Serrano was bothering her, that he would not leave her alone, and that he was touching her inappropriately.  See id.  She stated that he had, on more than one occasion, touched her breasts and buttocks, and that he continued to do so after she told him to stop.  See id. In his declaration, Matarrese states that he found the employee's allegations both compelling and disturbing, and he concluded that Serrano had engaged in the conduct as his accuser described.  See id.

On March 11, 1998, Atencio proposed Serrano's removal from federal service.  See Serrano Depo. at 11:4-6.  The proposed removal was based on charges of sexual misconduct.  See id. at 84:6-19.  Serrano was subsequently removed from federal service on June 16, 1998.  See id. at 51:11-16;

---

[1]  The citation given by the Defendant does not establish that Leonard Atencio was the Forest Service Supervisor; however, Serrano did not dispute this fact in his response, and thus it is deemed admitted.

Merit Systems Protection Board ("MSPB") Settlement Agreement at 1 (not dated).

Shortly thereafter, Serrano filed a complaint with the MSPB, challenging his removal. <u>See</u> Serrano Depo. at 51:14-16. In August 1998, the USFS and Serrano entered into a settlement agreement, resolving all EEO claims and claims pending before the MSPB. <u>See id.</u> at 51:17-23. The most recent EEO activity preceding Serrano's non-selection for the Hotshot Superintendent position was Serrano's MSPB appeal filed in June 1998. <u>See id.</u> at 51:22-52:2.

### 2. **Hotshot Vacancy.**

In November 1999, the USFS issued a Vacancy Announcement, R310-020-00G, for the following position on the Santa Fe National Forest: Supervisory Forestry Technician (Hotshot Superintendent). <u>See</u> Matarrese Decl. ¶ 3, at 1.

Serrano applied for the position. <u>See</u> Complaint ¶ 14, at 4. The USFS authorized Michael Matarrese, Fire and Aviation Staff Officer, Santa Fe National Forest, to impanel a number of USFS employees to review and rate the applications. <u>See</u> Matarrese Decl. ¶ 4, at 1. That panel consisted of the following employees: (i) Kevin Joseph, Fire Management Officer, Española Ranger District; (ii) Danny Kellogg, Acting Fire Management Officer, Coyote Ranger District; (iii) Renee Montoya, Santa Fe Hotshot Squad Boss; and (iv) Ron Simpson, Acting Santa Fe Hotshot Foreman. <u>See id.</u> Matarrese was also authorized to make a recommendation upon completion of the panel's review and evaluation of the applications. <u>See id.</u> Matarrese was chairman of the panel. <u>See</u> Affidavit of Ron Simpson ("Simpson Aff.") at 2 (executed January 29, 2001).

The panel met at the Santa Fe National Forest Service office in Santa Fe, New Mexico. <u>See</u> Matarrese Decl. ¶ 5, at 2. The applications were distributed to all panel members, and Matarrese asked the panel to rate the applications using the evaluation criteria set forth in the Vacancy

Announcement.  See id.  The panel considered the following factors: (i) safety; (ii) communication skills; and (iii) fire management knowledge skills.  See Simpson Aff. at 3.  After reviewing the applications, the panel concluded that Serrano, Richard Tingle, and two other applicants were qualified for the position.  See Evaluation of Candidates (dated January 4, 2000); Matarrese Decl. ¶ 2, at 1.  The panel determined that the top three applicants were Tingle and two others that did not include Serrano.  See Matarrese Decl. ¶ 6, at 2; Simpson Aff. at 2.

The panel interviewed the top three candidates by telephone.  See Matarrese Decl. ¶ 6, at 2; Simpson Aff. at 2.  At the end of the interviewing process, the panel concluded that Tingle was the most qualified applicant for the position.  See Matarrese Decl. ¶ 7, at 2; Simpson Aff. at 3.  Simpson determined that, although Serrano had at least Tingle's level of fire management knowledge background, Tingle had more experience, including Hotshot experience, than Serrano -- Tingle had been a Hotshot supervisor for at least 3 years -- and Tingle's presentation of his application was much stronger than Serrano's.  See Simpson Aff. at 3.  The USFS's Personnel Office prepared a Certificate of Candidates, which was forwarded to Robert Leaverton, Deputy Forest Supervisor, for selection.  See Certificate of Candidates (dated January 13, 2005).  Serrano's name was on the Certificate.  See id.

Matarrese recommended that Tingle be selected for the position based on the panel's evaluation and results of the interviews.  See Matarrese Decl. ¶ 9, at 2.  He did not recommend Serrano for the position for two reasons: (i) Serrano had not completed the Technical Fire Management Training Course; and (ii) he believed that Serrano lacked the skills and judgment necessary to be an effective supervisor based on the past alleged sexual misconduct.  See id. ¶¶ 9, 10, at 2-3.  Matarrese stated that he could not, in good conscience, recommend that Serrano be placed

in a supervisory position given the seriousness of the female employee's charges.  See id. ¶ 11, at 3.
On January 13, 2000, Leaverton selected Tingle for the position.  See Complaint ¶¶ 14, 17, at 4.

The Defendant contends that, approximately two weeks before the selection, Serrano
informed at least one of the three panelists evaluating the applications -- Simpson -- that he had no
interest in the position; he asked not to be selected for the job.  See Simpson Aff. at 3.  Serrano in
his affidavit maintains that he never said this to Simpson.  See Serrano Aff. ¶¶ 14-15, at 4.  In his
earlier deposition, however, Serrano stated only that he could not recall ever having made that
statement.  See Serrano Depo. at 72:9-73:25.  The Defendant also contends that before the selection,
Serrano stated to Kevin Joseph that, if he were not selected and after he was passed over, he intended
to file an EEO complaint and use that complaint to leverage himself into another GS-9 position on
the Española Ranger District that he wanted.  See id. at 77-78.  Serrano, in conclusory fashion,
argues that this is a mis-characterization, see Plaintiff Andrew J. Serrano's Response in Opposition
to Defendant's Motion for Summary Judgment ("Response to Motion for Summary Judgment") at
11, filed September 28, 2005 (Doc. 26), and that at no time was he pursuing the hotshot position
solely for the purpose of creating an EEO complaint and thereby gaining leverage, see Serrano Aff.
¶ 18, at 5.

Serrano bases his Complaint for Discrimination and Reprisal/Retaliation on three EEO
complaints he filed with the United States Department of Agriculture's Equal Employment
Opportunity Office in Washington, D.C.  Serrano filed his first EEO complaint on June 14, 2000.
In that complaint, Serrano alleged discrimination on the basis of race/national origin, color, and
reprisal when he was not selected to fill a vacant Supervisory Forestry Technician position -- Hotshot
Superintendent -- on the Española Ranger District.  See Serrano Depo. at 50:4-25.

3.  **AFMO Vacancy.**

In October 2000, the USFS issued a Vacancy Announcement, R310-002-01, for the following position on the Santa Fe National Forest: Supervisory Forestry Technician.  See Vacancy Announcement at 1 (not dated).  The USFS subsequently amended the Vacancy Announcement, changing the area and level of consideration from Region 3 to Forest Service-wide.  See Serrano Depo. at 148:16-19.  Serrano applied for the position.  See Complaint ¶ 18, at 4.

John Miera, the recommending official for the position, asked Joseph and Kellogg to review and rate the applications, using the following criteria derived from the amended Vacancy Announcement: (i) fire management program administration; (ii) knowledge of fire behavior operation and ecology; (iii) fuels and prescribed program administration; (iv) knowledge of related fields such as range ecology; (v) supervision and training; (vi) inter-agency cooperation/interaction and participation; and (vii) resource team building.  See Affidavit of John Miera ("Miera Aff.") ¶¶ 7, 10, at 2 (executed December 3, 2001).  Each applicant was awarded points for each selection criterion.  See Scoring Matrix at 1 (dated November 20, 2000).  Darroll Abeyta, Mark Empey, and Serrano were the top three candidates, with Abeyta receiving 18+ points, Empey 14+ points, and Serrano 11 points.  See Scoring Matrix at 1.  Abeyta was considered the top candidate.  See id.; Miera Aff. ¶ 11, at 2-3.

The USFS's Personnel Office prepared a Certificate of Candidates.  See Certificate of Candidates at 1 (dated February 14, 2001).  Serrano's name was on the Certificate.  See id.  Miera, District Ranger, Española Ranger District, was the recommending official for the position.  See Miera Aff. ¶ 6, at 1-2.

Miera recommended Abeyta for the position, believing that he was the best qualified applicant

for the job.  See id. ¶ 11, at 2-3.  Specifically, he believed that Abeyta was the superior candidate for the position because: Abeyta was currently managing a twenty-person firefighting crew; he was involved with other firefighting agencies as a Safety Officer and had demonstrated a willingness to take on a variety of assignments; he was a member of the Engine Academy, which worked with other agencies to develop standards and recommendations for firefighting; he frequently volunteered for assignments; and he had better "rapport and chemistry with people in the fire shop" than Serrano, and he was a better motivator, coordinator and communicator than Serrano.  See id.  Atencio, concurring with Miera's recommendation, then selected Abeyta for the position.  See Affidavit of Leonard Atencio ("Atencio Aff.") ¶ 6, at 2 (executed January 3, 2002).

Serrano filed his second Complaint of Employment Discrimination on June 14, 2001, alleging retaliation when he was not selected as an AFMO on the Española Range.  See Serrano Depo. at 144.

### 4.  Coyote Ranger District Detail.

On June 3, 2001, Serrano was detailed to the Coyote Ranger District to serve as a Supervisory Forestry Technician.  The detail was a temporary promotion, from grade 7 to grade 9, not to exceed 120 days.  See Declaration of Mary Jo Gallegos ("Gallegos Decl.") ¶ 4, at 1-2 (executed August 25, 2005).  On September 23, 2001, the personnel office executed a Notification of Personnel Action, lowering Serrano's grade level from grade 9 to grade 7 and reassigning him to the Española Ranger District.  See id. ¶ 5, at 2.

On November 5, 2001, Miera requested that Serrano be detailed to the Coyote Ranger District to an unclassified position not to exceed January 20, 2002.  See id. ¶ 6, at 2.  The personnel office approved that detail on November 6, 2001.  See id.  The detail's effective date was September 23, 2001.  See id.

Serrano continued to work on detail to the Coyote Ranger District through June 2002.  See Serrano's Letter to EEO Counselor at 1 (dated May 29, 2002); Gallegos Decl. ¶ 12, at 3.  On June 30, 2002, Serrano was promoted to grade 9 and reassigned permanently to the Coyote Ranger District.  See Gallegos Decl. ¶ 7, at 2.  Serrano was promoted once again -- to grade 11 -- on August 24, 2003.  See id.

Serrano alleges that, after his detail was extended in September 2001, the USFS should have executed one or more Standard Form 52s (Request for Personnel Action) indicating that he was performing the duties of a Supervisory Forestry Technician for the period September 2001 through June 2002.  See Serrano Depo. at 226-229.  Serrano contends that, had the paperwork been submitted, his experience gained on the Coyote Ranger District Details, as a GS-9 employee, would have counted toward the time-in-grade requirement for any subsequent promotion to a grade 9 or higher position.  See id. at 221-222.  The USFS's Merit Promotion Plan and the regulations governing details and temporary promotions, as found in 5 C.F.R. §§ 335.102 and 103, prohibited Serrano from continuing to serve as a Supervisory Forestry Technician, GS-9, beyond September 23, 2001.  See Gallegos Decl. ¶ 10, at 3.  He could not continue in that position unless he competed for the job with other employees and prevailed during the selection process.  See id.  The USFS's regulations also prohibited the agency from allowing Serrano to perform all of the duties of a position classified as GS-9 while paying him GS-7 wages.  See id. ¶ 11, at 3.  Because the USFS could not continue the noncompetitive temporary promotion beyond 120 days -- the time that Serrano spent in the Coyote Ranger District Details from September 23, 2001 through June 29, 2002 -- Serrano could not be credited toward any time-in-grade requirement for any future promotion as set forth in 5 C.F.R. § 300.605(a).  See id. ¶ 12, at 3.

The Defendant contends that Serrano is not alleging that he is entitled to any back pay for the period September 23, 2001 through June 29, 2002.  <u>See</u> Serrano Depo. at 229.  Serrano, however, states that he is seeking back pay, but that it is not the main issue with which he is concerned.  <u>See</u> Serrano Aff. ¶ 34, at 10.

## PROCEDURAL BACKGROUND

The Defendant moves the Court to grant summary judgment on the Plaintiff's Complaint.  <u>See</u> Motion for Summary Judgment at 1.  Serrano states that the issues before the Court are: (i) whether he has set forth a prima facie case of discrimination with respect to his non-selection for the Hotshot Superintendent position; (ii) whether the Defendant has alleged a legally sufficient reason for the non-selection of Serrano for the Hotshot Superintendent position; (iii) whether Serrano has established that the reasons alleged for his non-selection for the Hotshot Superintendent position were a pretext for discrimination; (iv) whether Serrano has established a prima facie case of retaliation with respect to his non-selection for the AFMO position; (v) whether Serrano has established that the reasons alleged for his non-selection for the AFMO position were a pretext for retaliation; (vi) whether Serrano has established that his claim relating to the Coyote Ranger District Detail rises to the level of an adverse employment action; and (vii) whether Serrano has established that the reasons alleged by the Defendant relating to the Coyote Ranger District Detail were a pretext for retaliation.  <u>See</u> Response to Motion for Summary Judgment at 2.[2]

The Defendant filed a motion for summary judgment on August 31, 2005.  <u>See</u> Motion for

_____

[2] Serrano agrees that the length of time between his MSPB settlement and his non-selection is too great to be probative of causation, and he does not oppose the dismissal of his retaliatory non-selection claim insofar as it applies to the Hotshot Superintendent position.  <u>See</u> Response to Motion for Summary Judgment at 2.  The Court will therefore grant the Defendant's motion for summary judgment as to the Hotshot retaliation claim and will dismiss that claim for retaliation.

Summary Judgment. Although Serrano's Response was due on September 14, 2005, Serrano did not file a response within the time frame that the rules allow. The Defendant filed a Notice of Completion on September 19, 2005. <u>See</u> Notice of Completion of Defendant's Motion for Summary Judgment (Doc. 24). The Court set a hearing on the Defendant's Motion for Summary Judgment for September 30, 2005. <u>See</u> Notice of Motion Hearing at 1, filed August 21, 2005 (Doc. 25). Weeks after his due date, and two days before the scheduled hearing, Serrano filed a response. <u>See</u> Response to Motion for Summary Judgment. Serrano briefly raised the issue of a violation of the MSPB Settlement Agreement in his Response, and in his Response pointed the Court to his Motion to Stay Proceedings for his in depth argument on the alleged violation and its relation to pretext. <u>See</u> <u>id.</u> at 10-11, 17. Even though Serrano referenced his Motion to Stay in his Response, he did not file his Motion to Stay until October 19, 2005 -- almost one month after he filed his Response. <u>See</u> Motion to Stay Case Pending Adjudication of Appeal for Violations of Merit Systems Protection Board Settlement Agreement ("Motion to Stay")(Doc. 29). At the October 20, 2005 hearing on the motion for summary judgment, Serrano again raised the issue of a violation of the MSPB Settlement Agreement as evidence of pretext. <u>See</u> Transcript of Hearing at 6:16 (taken October 20, 2005).[3] At the hearing, Serrano confirmed that he had not yet filed with the MSPB, but indicated it would be soon. <u>See</u> Transcript of Hearing at 8:17-22.

Serrano filed a Motion to Stay on October 19, 2005. <u>See</u> Motion to Stay. The Defendant filed a response to Plaintiff's Motion to Stay Proceedings on November 7, 2005, and certified that it mailed a copy of the response to opposing counsel on the same day. <u>See</u> Response to Plaintiff's

---

[3] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Motion to Stay Proceedings at 4 (Doc. 34).  Serrano did not file a reply within the time period pursuant to D.N.M.LR-Civ. 7.6(a), nor did he file a motion for an extension of time within the time period allowed.  Serrano argued in depth in his Motion to Stay, that Matarrese's reliance on Serrano's alleged sexual misconduct in the recommendation decision violated the MSPB Settlement Agreement and such violation showed pretext.  See Motion to Stay at 2-5.

At the hearing on October 20, 2005 the Defendant requested that the Court strike that portion of the Motion to Stay that is in actuality a surreply, and thus disregard that portion which pertains to the motion for summary judgment.  See Transcript of Hearing at 6:6-8; 45:3-5.  The Court believes it is best, however, to decide the motion for summary judgment on the merits, and to the extent that there are portions of the Motion to Stay that assist the Court in its ruling on the motion for summary judgment, the Court will consider them.

Under rule 7(a) of the Federal Rules of Civil Procedure, the complaint, answer and reply constitute the pleadings.  Motions and other papers are not pleadings.  See Fed. Rules of Civ. Proc. 7(a).  "[T]here is no provision in the Federal Rules of Civil Procedure for motions to strike motions and memoranda."  Searcy v. Soc. Security Admin., No. 91-4181, 1992 U.S. App. LEXIS 3805, at *5 (10th Cir. March 2, 1992)(unpublished)(citation omitted).  See 2 J. Moore, Moore's Federal Practice § 12.37[2], at 12-94, 12-94.1 (3d ed. 2004)("Only material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly. Motions, briefs, or memoranda, objections, or affidavits may not be attacked by the motion to strike.").

The Court will therefore not strike that portion of the Motion to Stay that is in actuality a surreply, but will consider it in ruling on the motion for summary judgment.

## STANDARD FOR DETERMINING MOTIONS FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides for entry of summary judgment where "there is no genuine issue as to any material fact" and the defendant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thomas v. IBM, 48 F.3d 478, 484 (10th Cir. 1995)(citation omitted). In applying this standard, the record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. See McKnight v. Kimberly Clark Corp., 149 F. 3d 1125, 1128 (10th Cir. 1998)(citing Applied Genetics Int'l, Inc. v. First Affiliated Sec. Inc., 912 F.2d 1238, 1241 (10th Cir. 1990)).

The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the movant will not bear the burden of proof at trial, this burden may be met by pointing to "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998)(citing Celotex Corp. v. Catrett, 477 U.S. at 325). Once the moving party meets its burden, "the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." Id.

The opposing party may not rest upon "mere allegations and denials in the pleadings . . . but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986)(citation omitted). An issue of fact is genuine if the

evidence is significantly probative or more than merely colorable such that a jury could reasonably

return a verdict for the non-moving party.  See id. at 249.  Summary judgment is appropriate against

any "party who fails to make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp.

v. Catrett, 477 U.S. at 322.

"The nonmoving party must go beyond the pleadings and establish, through admissible

evidence, that there is a genuine issue of material fact that must be resolved by the trier of fact."

Panis v. Mission Hills Bank, N.A., 60 F.3d 1486, 1490 (10th Cir. 1995)(citation omitted).  The court

must disregard statements of mere belief.  See Tavery v. U.S., 32 F.3d 1423, 1427 n.4 (10th Cir.

1994)(citing Automatic Radio Mfg. Co. v. Hazeltine Research, 339 U.S. 827, 831 (1950)).  The

existence of a mere scintilla of evidence is insufficient to support the nonmoving party's position.  See

Anderson v. Liberty Lobby, Inc., 477 U.S. at 252.  "Hearsay testimony cannot be considered because

a third party's description of a witness' supposed testimony is 'not suitable grist for the summary

judgment mill.'"  Wright-Simmons v. Okla. City, 155 F.3d 1264, 1268 (10th Cir. 1998)(quoting

Thomas v. IBM, 48 F.3d at 485).

## LAW REGARDING DISCRIMINATION AND RETALIATION

### 1. McDonnell Douglas Analysis.

Where Title VII claims of discrimination rest on indirect evidence, the claims are subject to

the burden-shifting framework that the Supreme Court of the United States established in McDonnell

Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Goodwin v. GMC, 275 F.3d 1005, 1011-12

(10th Cir. 2002)("[Plaintiff] may show discrimination . . . via the indirect McDonnell Douglas

burden-shifting method.")(citation omitted).  The same is true for Title VII retaliation claims.  See

Pastran v. K-Mart Corp., 210 F.3d 1201, 1205-06 (10th Cir. 2000)("Retaliation claims under Title VII are subject to the burden-shifting analysis of McDonnell Douglas Corp. v. Green . . .")(citing Jones v. Denver Post Corp., 203 F.3d 748, 752 (10th Cir. 2000)).  Under McDonnell Douglas, the establishment of a prima facie case of discrimination creates a presumption that the employer unlawfully discriminated or retaliated against the employee.  See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993)(citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)).  In turn, this "presumption places upon the defendant the burden of producing an explanation to rebut the prima facie case."  Id. at 506-507.

Once the defendant has met its burden, the presumption of unlawful discrimination "drops from the case."  Id. at 507.  The plaintiff then bears the ultimate burden of persuading the trier of fact that the defendant unlawfully discriminated or retaliated against him.  See id.  The plaintiff prevails either directly by proving that the defendant acted with discriminatory motive or indirectly by showing that the stated reason for its action was a pretext for discrimination, i.e., the facially nondiscriminatory reason was a cover-up for a decision motivated by unlawful discrimination.  See EEOC v. Flasher Co., 986 F.2d 1312, 1317 (10th Cir. 1992)(citation omitted).

### 2.  Race/National Origin and Color Discrimination From Failure to Promote.

To establish a prima facie claim of disparate treatment based on race/national origin or color, in a failure to promote context, the plaintiff must show: (i) the plaintiff is a member of a protected class; (ii) the plaintiff was qualified and applied for the position; (iii) despite the plaintiff's qualifications, she was not promoted to the position; and (iv) the promotional opportunity was filled or remained open.  See Jaramillo v. Colo. Judicial Dep't, 427 F.3d 1303, 1306-07 (10th Cir. 2005)(citing Cross v. The Home Depot, 390 F.3d 1283, 1286 (10th Cir. 2004)).  "[T]he critical prima

facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'" Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1227 (10th Cir. 2000)(quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. at 253).

### 3. **Retaliation.**

Title VII prohibits retaliation against employees for opposing any practice made unlawful by Title VII, or for asserting a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII. See Gunnell v. Utah Valley State College, 152 F.3d 1253, 1262 (10th Cir. 1998)(citation omitted). To establish a prima facie case of retaliation, the plaintiff must show that: (i) the plaintiff engaged in protected opposition or participated in a Title VII proceeding; (ii) the employer took an adverse employment action against the plaintiff subsequent to the protected activity; and (iii) there is a causal connection between the plaintiff's participation in the protected activity and the adverse employment action taken by the employer. See Mattioda v. White, 323 F.3d 1288, 1293 (10th Cir. 2003)(citing Love v. Re/Max of America, Inc., 738 F.2d 383, 385 (10th Cir. 1984)). To establish a causal connection by temporal proximity, the plaintiff may adduce evidence justifying an inference of retaliatory motive by showing protected conduct followed closely by an adverse action. See Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1395 (10th Cir. 1997)("Unless the termination is very closely connected in time to the protected conduct, the plaintiff will need to rely on additional evidence beyond mere temporal proximity to establish causation.")(citation omitted). To establish a causal connection, the plaintiff must show that the management personnel responsible for making the decision had knowledge of the plaintiff's protected acts. See Williams v. Rice, 983 F.2d 177, 181 (10th Cir. 1993)(quoting Anderson v. Phillips

Petroleum Co., 861 F.2d 631, 635 (10th Cir. 1988)).

### 4.    Legitimate Nondiscriminatory Explanation.

The presumption that arises once a plaintiff has established a prima facie case places upon the defendant the burden of producing an explanation to rebut the prima facie case. See St. Mary's Honor Center v. Hicks, 509 U.S. at 506-507. This burden is "one of production, not persuasion." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000)(citation omitted). To satisfy its burden, the defendant need only articulate "through some proof" a facially nondiscriminatory explanation. EEOC v. Flasher Co., 986 F.2d at 1316 (citations omitted); Panis v. Mission Hills Bank, N.A., 60 F.3d at 1490-91. The defendant is not, at this stage of the proceedings, obligated to litigate the merits of its reasoning nor prove that the "reason relied upon was bona fide." EEOC v. Flasher Co., 986 F.2d at 1316; See also Panis v. Mission Hills Bank, N.A., 60 F.3d at 1491 (citation omitted). The reasoning must be reasonably specific and clear. EEOC v. Flasher Co., 986 F.2d at 1316.

### 5.    Pretext.

The ultimate burden that is placed on the plaintiff, once the defendant has met its burden of offering a legitimate nondiscriminatory reason for the action, is met either directly by proving that the defendant acted with discriminatory motive or indirectly by showing that the stated reason for its action was a pretext for discrimination, i.e., the facially nondiscriminatory reason was a "cover-up for a decision motivated by unlawful discrimination." EEOC v. Flasher Co., 986 F.2d at 1317 (quoting McDonnell Douglas Corp. v. Green, 411 U.S. at 804-05). Pretext can be shown "by producing evidence of 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the

asserted non-discriminatory reasons.'" Jaramillo v. Colo. Judicial Dep't, 427 F.3d at 1308 (quoting

Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)).

"[A]s a general rule, an employee must proffer evidence that shows each of the employer's

justifications are pretextual." Tyler v. RE/MAX Mountain States, Inc., 232 F.3d 808, 814 (10th Cir.

2000)(citing Wilson v. AM General Corp., 167 F.3d 1114, 1120 (7th Cir. 1999)).  The Tenth Circuit

in Jaramillo v. Colo. Judicial Dep't, recognized five exceptions to the general rule that an employee

must proffer evidence to show each explanation is pretextual:

> In some cases, however, a successful attack on part of the employer's legitimate,
> non-discriminatory explanation is enough to survive summary judgment even if one
> or more of the proffered reasons has not been discredited.  Something less than total
> failure of the employer's defense is sufficient to create a genuine issue of fact when
> (1) the reasons are so intertwined that a showing of pretext as to one raises a genuine
> question whether the remaining reason is valid, see id. at 70; (2) the pretextual
> character of one explanation is "so fishy and suspicious," id., that a jury could "find
> that the employer (or its decisionmaker) lacks all credibility," Chapman v. AI
> Transport, 229 F.3d 1012, 1050 (11th Cir.2000) (en banc) (Birch, J., concurring and
> dissenting); (3) the employer offers a plethora of reasons, and the plaintiff raises
> substantial doubt about a number of them, Tyler, 232 F.3d at 814; (4) the plaintiff
> discredits each of the employer's objective explanations, leaving only subjective
> reasons to justify its decision, see Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1298-99
> (D.C.Cir.1998) (en banc); or (5) the employer has changed its explanation under
> circumstances that suggest dishonesty or bad faith, Cole v. Ruidoso Mun. Schs., 43
> F.3d 1373, 1380-81 (10th Cir.1994).

Jaramillo v. Colo. Judicial Dep't, 427 F.3d at 1310.

## ANALYSIS

The Defendant is entitled to summary judgment as a matter of law on the discrimination and

retaliation claims that Serrano raises in his Complaint.  The Defendant hand delivered the motion for

summary judgment to counsel for Serrano on August 31, 2005.  See Defendant's Motion for

Summary Judgment at 1, Certificate of Service of Process, filed August 31, 2005 (Doc. 21);

Defendant's Memorandum in Support of Motion for Summary Judgment at 18, Certificate of Service of Process, filed, August 31, 2005 (Doc. 22). Serrano did not file a response until September 28, 2005. See Response to Motion for Summary Judgment. Thus, Serrano did not file or serve a response within the 14-day rule. See D.N.M. LR-Civ. 7.6(a). Serrano's failure to file and serve a response in opposition to the Defendants' Motion to Dismiss, within the time that the local rules prescribe, constitutes consent to grant the motion. See D.N.M. LR-Civ. 7.1(b). The Court could also deem admitted all of the Defendant's Statement of Facts. See D.N.M. LR-Civ. 56.1(b). Thus, the Court could in its discretion, deem concurrence as given, which alone would warrant dismissal. See Hernandez v. George, 793 F.2d 264, 266 (10th Cir. 1986)("This court has also recognized that district courts have discretion in applying local rules."). "Considerable deference is accorded to the district courts' interpretation and application of their own rules of practice and procedure." Smith v. Ford Motor Co., 626 F.2d 784, 796 (10th Cir. 1980)(citing Martinez v. Thrifty Drug and Discount Co., 593 F.2d 992 (10th Cir. 1978)) Nevertheless, the Court has carefully reviewed the file and also determined that the Defendant is entitled to summary judgment as a matter of law on the discrimination and retaliation claims that Serrano raises in his Complaint.

Before a district court grants summary judgment and dismisses a case because a party fails to respond to a summary judgment motion in violation of a local rule, the Tenth Circuit requires the district court to address the following factors: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant . . ." Hancock v. Okla. City, 857 F.2d 1394, 1396 (10th Cir. 1988)(citing Meade v. Grubbs, 841 F.2d 1512 (10th Cir. 1988)). The district court may dismiss the case for failure to response to a summary judgment motion "only when these aggravating factors outweighed the judicial system's strong

predisposition to resolve cases on their merits . . ." Id.  Here, the defendant did not suffer great prejudice, because the court vacated the original hearing setting, and the defendant was able to file a reply.  See Notice Vacating and Rescheduling Motion Hearings, filed September 29, 2005 (Doc. 27); Reply to Plaintiff's Response to Motion for Summary Judgment, filed October 13, 2005 (Doc. 28).  The amount of interference with the judicial process was not too great as the response was two weeks late, and the Court was able to have a hearing on the matter 19 days later than the originally scheduled hearing.  While Serrano has not given the Court an explanation as to why he filed the response so late, the Court cannot say that the above factors outweigh the system's strong predisposition to resolve the motion on its merits.  The Court will therefore address the merits of the summary judgment motion.

## I.      THE DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON SERRANO'S CLAIMS OF DISCRIMINATION RELATING TO THE HOTSHOT POSITION AND SELECTION.

The Defendant has articulated legitimate non-discriminatory explanations for its decision to promote Tingle to the Hotshot position.  Serrano has not shown that there is a genuine issue of material fact as to these explanations, nor as to pretext.  Accordingly, the Court will grant the Defendant summary judgment on Serrano's claims of discrimination relating to that position.

### A.      THE DEFENDANT HAS GIVEN A LEGITIMATE, NON-DISCRIMINATORY REASON FOR THE EMPLOYMENT ACTION.

The Defendant has articulated legitimate and nondiscriminatory reasons for Serrano's non-selection to the Hotshot position.  On or about November 16, 1999, the USFS issued an announcement seeking applicants to fill a vacant Hotshot Superintendent position on the Española Ranger District.  See Matarrese Decl. ¶ 3, at 1.  A panel of USFS employees reviewed and rated the

applications. <u>See</u> <u>id.</u> ¶¶ 4, 5-6, at 1-2. Five people including Serrano, applied for the position. <u>See</u> Simpson Aff. at 2-3. Although Serrano was qualified, the panel did not rank him in the top three candidates. <u>See</u> <u>id.</u> The Panel concluded that Tingle was the most qualified applicant. <u>See</u> Matarrese Decl. ¶ 7, at 2; Simpson Aff. at 3.

After rating the applications, the panel prepared a Certificate of Candidates. <u>See</u> Certificate of Candidates. The panel then forwarded the Certificate to Leaverton for selection. <u>See</u> <u>id.</u> Matarrese recommended Tingle for the position based on the results of the panel's evaluation and interviews. <u>See</u> Matarrese Decl. ¶ 9, at 2. He declined to recommend Serrano for two reasons, notwithstanding his qualifications: (i) Serrano had not completed the Technical Fire Management Training Course; and (ii) Matarrese believed that Serrano lacked the skills and judgment necessary to be a good supervisor based on the report of sexual misconduct occurring approximately two years before the selection. <u>See</u> <u>id.</u> ¶¶ 9, 10, at 2-3. The Defendant's explanations as to why Serrano was not selected for the position are legitimate and non-discriminatory, and do not facially violate Title VII.

Matarrese based his selection of Tingle, and his non-recommendation of Serrano, specifically on the panel's evaluation and interviews, on his belief that Serrano was not qualified because he had not completed the Technical Fire Management Training Course, and because Matarrese could not bring himself to recommend Serrano for the position in light of the allegations of sexual misconduct. Title VII does not prohibit these reasons.

First, Serrano contends that the reasons offered by the Defendant are conclusory and self-serving, and that they are not clear and specific, and are thus insufficient to establish a legitimate non-discriminatory reason for the adverse action. <u>See</u> Response to Motion for Summary Judgment at 8,

15-16. The Court disagrees with Serrano's characterization of the Defendant's explanations. Matarrese specifically stated that he recommended Tingle for the position based on the panel's evaluation -- concluding that Tingle was most qualified -- and the results of the interviews. See Matarrese Decl. ¶ 9, at 2. Matarrese also specifically stated that he did not recommend Serrano for the position because Serrano had not completed the Technical Fire Management Training Course and he believed that Serrano lacked the skills and judgment necessary to be an effective supervisor. See id. ¶¶ 9, 10, at 2-3. These statements are clear, specific, and are based on Matarrese's first-hand knowledge of the facts and circumstances surrounding the Hotshot selection. The Tenth Circuit stated in Murray v. City of Sapulpa, 45 F.3d 1417 (10th Cir. 1995), that an affidavit must be "based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." 45 F.3d at 1422 (citing Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991)). Here, the statements in the affidavit are based upon personal knowledge, and they set forth facts that would be admissible in evidence. Although they may be self-serving, they are no more so than most rule 56 affidavits and are not conclusory, as they are based on personal knowledge as to specific facts.

Next, Serrano contends that the explanation offered by the Defendant is insufficient, because "Mr. Matarrese does not identify what questions were asked or what the applicants' answers were. [Matarrese] does not identify why the arbitrary decision was made not to interview Mr. Serrano was made [sic]." Response to Motion for Summary Judgment at 9. Serrano misstates the Defendant's burden on pretext. This burden is a burden of production, and not a burden of persuasion. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. at 142. To meet its burden, the Defendant need only articulate through some proof a facially nondiscriminatory reason. The Defendant is not

-21-

required to litigate the merits of its reasoning nor is the Defendant required to prove that the reasons relied upon were bona fide.  See EEOC v. Flasher Co., 986 F.2d at 1316; Panis v. Mission Hills Bank, N.A., 60 F.3d at 1491.  What Serrano asserts in his argument is what the court in EEOC v. Flasher Co. decided a defendant need not prove.  The Defendant has articulated a facially nondiscriminatory explanation -- he believed Tingle was the most qualified based on the panel's evaluation and interviews -- and McDonnell Douglas does not further require it, at this stage, to litigate the merits of its reasoning nor to prove that the reasons upon which it relied were bona fide.

Serrano contends that an employer may not base an adverse action on a past dispute that was resolved by a settlement agreement.  In support of this contention, Serrano cites to Davis v. Department of Veterans Affairs, Nos. NY-0752-95-0004-C-1, NY-0752-95-0006-C-1, 1996 MSPB LEXIS 210, for the proposition that the Defendant may not rely on the past allegations of sexual misconduct as a legitimate explanation.  See Response to Motion for Summary Judgment at 10.  In Davis, an agency imposed a thirty-day suspension and reassignment upon an employee, and removed a different employee for their alleged behavior during a meeting.  See Davis v. Department of Veterans Affairs, 1996 MSPB LEXIS 210, at *1.  After the parties entered into a settlement agreement, the agency proposed a new thirty-day suspension of the employee and another removal of the other employee for the same underlying conduct that was the subject of the settlement agreement.  See 1996 MSPB LEXIS 210, at *1-2.  The MSPB found that the agency breached the settlement agreement and that the agency was therefore not authorized to discipline the employees for the same conduct.  See 1996 MSPB LEXIS 210 at *3-5.  Serrano may be correct that Matarrese's partial reliance on Serrano's past alleged sexual misconduct violated the MSPB Settlement Agreement between the Defendant and Serrano.  Such alleged breach of the agreement, however,

does not mean that Matarrese's reliance on the alleged sexual misconduct facially violates Title VII. The Defendant's explanation concerning his hesitation based on the past alleged sexual misconduct relates to the claim of discrimination based on race/national origin or color.  This explanation is facially non-discriminatory, and thus is a valid explanation for the non-selection under Title VII.  <u>See</u> <u>Bellairs v. Coors Brewing Co.</u>, No. 95-1486, 1997 U.S. App. LEXIS 4626, at *7-8 (10th Cir. March 12, 1997)(unpublished)("[The Defendant], however, met its subsequent burden by establishing a legitimate, non-discriminatory reason for terminating Bellairs: gross misconduct in the form of sexual harassment.")(citations omitted).[4]; <u>Wheeler v. Aventis Pharms.</u>, 360 F.3d 853, 858 (8th Cir. 2004)("We agree that an employee's termination for violation of a sexual-harassment policy could be a legitimate, nonracially discriminatory basis."); <u>Waggoner v. Garland</u>, 987 F.2d 1160, 1164 (5th Cir. 1993)("The City justified the discharge on the basis of the allegations of [plaintiff's] sexual harassment of Connor, on its face a legitimate and nondiscriminatory reason.").

The Defendant has discharged its burden under <u>McDonnell Douglas</u>, dispelling any inference of discrimination.  To survive summary judgment, Serrano must come forward with evidence indicating that the Defendant's explanation is pretextual or unworthy of belief.  <u>See</u> <u>EEOC v. Flasher Co.</u>, 986 F.2d at 1317.

### B.    SERRANO HAS NOT PRESENTED THE COURT EVIDENCE OF PRETEXT.

Serrano contends that the Defendant's offered reasons are pretextual.  <u>See</u> Response to Motion for Summary Judgment at 16.  Serrano argues that he has shown pretext by putting forth

---

[4]  The Tenth Circuit Rule 36.3( B) states: "Citation of an unpublished decision is disfavored. But an unpublished decision may be cited if: (i) it has persuasive value with respect to a material issue that has not been addressed in a published opinion; and (ii) it would assist the court in its disposition."  This unpublished decision meets both these criteria, and the rules therefore allow citation to this unpublished decision.

evidence which shows that he was more qualified for the position than Tingle.  See id. at 16-17.

Additionally, Serrano contends that the "Defendant has failed to explain in any fashion how Mr.

Serrano was less qualified than Tingle." Id. at 17.  Serrano also argues that the two reasons offered

by the Defendant are not credible.  As a basis for his argument, Serrano first contends that "the

Training Course" was not an essential element for the Hotshot Superintendent position," and that Mr.

Serrano had in fact effectively completed the course work -- although not technically -- and he "had

more than sufficient experience to make up for the fact that he did not complete the project." Id.

Second, Serrano repeats that Matarrese may not rely on the past allegation of sexual misconduct as

a reason for this action, and argues that because the USFS rescinded his removal, this shows that

Serrano was qualified to work.  See id. at 10.

      Serrano has not met his burden to show pretext.  First, the Defendant has readily admitted that

Serrano was qualified for the position.  Serrano repeating that he was qualified does not show pretext

because the Defendant never alleged that Serrano was not qualified.   Second, Serrano has not

presented sufficient evidence to show that Serrano was more qualified than Tingle.  The Tenth Circuit

in Sanchez v. Philip Morris, Inc., 992 F.2d 244 (10th Cir. 1993), held that there is no inference of

pretext from comparing applications, unless the disparity is overwhelming. See 992 F.2d at 247. See

also Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1319 (10th Cir. 1999) overruled on other

grounds by National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)("The disparity in

qualifications must be 'overwhelming' to be evidence of pretext.")(citation omitted); Odom v. Frank,

3 F.3d 839, 847 (5th Cir. 1993)("[D]ifference in qualifications of applicants must be so apparent as

'to jump off the page and slap us in the face' to support a finding of pretext.").  Although Serrano

has attached Tingle's application to his affidavit, he has not argued the qualifications in his briefs, and

he has not performed a side-by-side comparison.  The Court, looking at both applications, has no way of determining whether Tingle or Serrano was more qualified, and certainly cannot say that any disparity is overwhelming.  Serrano has only given his opinion that he was more qualified, but has not sufficiently shown the Court the reasons for this conclusory opinion.  See Bullington v. United Air Lines., 186 F.3d at 1318 ("[Plaintiff's] own opinions about her qualifications do not give rise to a material fact dispute.")(citation omitted).

In analyzing Serrano's contention of pretext, the Court must examine the facts as they appeared to the person making the selection, or the recommending official -- Matarrese.  See Selenke v. Med. Imaging of Colo., 248 F.3d 1249, 1261 (10th Cir. 2001)(citation omitted).  Thus, the Court is precluded from "second guessing the business judgment" of the Defendant.  Id. (citation omitted).  Matarrese explained that Serrano's failure to complete the Training Course was one reason that he did not recommend Serrano for the decision.  For the Court to say that this rationale is pretext, based on Serrano's conclusory statement that his failure to complete the Course was insignificant, would enmesh this Court in casting supervisory business judgments.  Serrano has not shown that he did in fact complete the course, or how that course was in fact insignificant.

Matarrese recommended Tingle because he thought Tingle was the most qualified candidate, based on the panel's evaluation, and he did not recommend Serrano because Serrano did not complete the Training Course and he believed that Serrano lacked the skills and judgment necessary to be an effective supervisor based on the alleged previous sexual misconduct.  Serrano has not presented evidence to the Court that Matarrese's belief that Tingle was the most qualified candidate for the position, his belief in the importance of the completion of the Training Course or his belief that Serrano lacked the skills and judgment necessary to be an effective supervisor, based on the alleged

previous sexual misconduct, were insincere, or pretextual for a prohibited discriminatory reason.

Serrano argues that the fact that the USFS rescinded Serrano's termination following the alleged sexual misconduct, shows that he was qualified and not a danger to other employees. <u>See</u> Response to Motion for Summary Judgment at 18. Serrano again misses the point. The Defendant has not argued that Serrano was not qualified. The Defendant has not argued that Serrano was dangerous. Matarrese believed that Serrano lacked the skills and judgment necessary to be an effective supervisor based on the alleged sexual misconduct, and did not argue that his non-recommendation was based on a belief that Serrano was dangerous.

Finally, Serrano contends that Matarrese's allegedly improper reliance on Serrano's past allegations of sexual misconduct shows pretext. In support of this contention, Serrano cites cases that stand for the proposition that violation of or departure from established internal procedures could be evidence of pretext. Serrano's reliance on such cases is misplaced. The cases relied on by Serrano concerned internal hiring/promotion/transfer procedures. In those cases, showing of pretext centered around the process itself. For example, in <u>Alvarado v. Board of Trs. of Montgomery Community College</u>, 928 F.2d 118 (4th Cir. 1991), the court found that an inference of pretext was raised when the defendant violated its own policies concerning promotion. <u>See</u> 928 F.2d at 122-23. The defendant there promoted one employee over another even though the employee that was promoted did not submit an application as required by policy, whereas the employee that was not promoted did submit an application as required. <u>See id.</u> at 122. Also, the College's policy was to fill a vacant permanent position with the employee who held the job as a temporary employee. <u>See id.</u> The employee there who held the job as a temporary employee did not receive the promotion, while the employee who did not hold the job as a temporary employee did receive the promotion. <u>See id.</u>

There the evidence showed that the employer did not follow its own hiring mandates during the hiring process itself.

Here, there is no evidence that the Defendant, when selecting the Hotshot Supervisor, did not follow internal policies and procedures in the selection process, nor is there evidence of disturbing procedural irregularities.  That Matarrese relied on his past experience with Serrano, which reliance may or may not have violated the MSPB Settlement Agreement, does not show pretext by irregularity or procedural departure.  Serrano has not presented evidence that the violation of the MSPB Settlement Agreement is a departure from an established internal policy.  He has not pointed to any of the Defendant's internal policies or procedures to show that the reliance by Matarrese on Serrano's past alleged sexual misconduct in non-recommendation violated any relevant hiring or promotion procedures and policies in the Hotshot selection.

Even if Matarrese's reliance on Serrano's alleged sexual misconduct was a violation of the MSPB Settlement Agreement and the Court construed such violation as a procedural irregularity, and Serrano had thus shown that there was a genuine issue of material fact as to the pretextual nature of Matarrese's reliance on Serrano's alleged sexual misconduct, there would not be a sufficient issue of fact on the other two explanations that Matarrese offered.  The five exceptions recognized in Jaramillo v. Colo. Judicial Dep't are not met in this case and thus Serrano must show pretext as to each legitimate explanation.  See Tyler v. RE/MAX Mountain States, Inc., 232 F.3d at 814.

First, this case is not a situation where an issue of fact on the reliance on the alleged sexual misconduct would also create a factual issue on the remaining two reasons because the alleged pretextual explanation was so intertwined with the other explanations that a question of their validity is created.  Matarrese believed, based on the panel's evaluation, that Tingle was the most qualified

person for the position.   He stated that was the reason he recommended Tingle.   Tingle's qualifications are independent and separate from Serrano's alleged sexual misconduct.   Matarrese stated that he did not recommend Serrano because he did not complete the Training Course.   Again, this reason does not appear to be intertwined with the reliance on the alleged sexual misconduct explanation such that an issue of fact is created on the other reasons.

Second, if the Court were to construe the alleged violation of the settlement agreement as a procedural irregularity or departure from policy or procedure, it does not appear to be of a "fishy and suspicious" nature such that a jury could find that the employer lacks all credibility.   Serrano does not present any evidence that Matarrese lied about his reliance, but at most has shown that Matarrese may have improperly relied on the alleged sexual misconduct.

Third, this case does not present a situation where the Defendant has offered a "plethora" of explanations, and Serrano has raised substantial doubt on a number of them.   Matarrese offered three explanations, and Serrano has not raised a substantial doubt about any of them, and thus has not raised a genuine issue of fact as to the remaining two explanations.

Fourth, Serrano has not discredited each of the employer's objective explanations, leaving only subjective reasons to justify its decision.   In Jaramillo v. Colo. Judicial Dep't, the Tenth Circuit found that this fourth exception was not met.   The court stated: "Nor has Ms. Jaramillo eliminated all objective explanations of the CJD's decision. . . . The CJD's explanation is supported by the evidence, which is sufficient to support a good faith belief that Mr. Sandoval was better qualified than Ms. Jaramillo."   Jaramillo v. Colo. Judicial Dep't, 427 F.3d at 1310.   The Tenth Circuit distinguished AKA v. Wash. Hosp. Ctr., 156 F.3d 1284, 1298-99 -- the case the Tenth Circuit relied on in recognizing this fourth exception -- because AKA v. Wash. Hosp. Ctr. found that, because the

plaintiff was markedly more qualified, the employer was left with a subjective assessment, whereas in Jaramillo v. Colo. Judicial Dep't, the court found that there was sufficient evidence to support a good faith belief that the employee selected was more qualified than the plaintiff.  See Jaramillo v. Colo. Judicial Dep't, 427 F.3d at 1310.  The evidence here is also sufficient to support Matarrese's good faith belief that Tingle was the most qualified.   The panel rated Tingle as the top candidate based on the evaluation criteria, and Serrano has not pointed the Court to any evidence that he was "markedly" more qualified than Tingle, leaving the Defendant with only a subjective explanation, as was the case in AKA v. Wash. Hosp. Ctr.

Finally, there is no evidence here that the Defendant has changed any of its explanations. Thus, even if Serrano could show that Matarrese's reliance on the alleged sexual misconduct was pretextual in nature, the Defendant would still be entitled to judgment as a matter of law on the pretext issue in general, because Serrano has not raised a genuine issue of material fact about the remaining explanations.

## II.    THE DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON SERRANO'S CLAIMS OF RETALIATION RELATING TO THE AFMO POSITION AND SELECTION.

Serrano contends that he was not selected to fill the vacant AFMO position in retaliation for having filed an EEO complaint in June 2000.  Serrano's claim of retaliation concerning the AFMO vacancy fails because he cannot satisfy his prima facie burden.  And even if he could present a prima facie case, the Defendant has articulated legitimate, non-discriminatory reasons for hiring Abeyta, and Serrano has not introduced evidence of pretext.

### A.    SERRANO HAS NOT ESTABLISHED A CAUSAL CONNECTION AND HAS NOT ESTABLISHED A PRIMA FACIE CASE OF RETALIATION.

Serrano cannot establish a prima facie case of retaliation.  The only evidence that Serrano

presents that shows a causal nexus appears to be temporal proximity.  Here the time period between

his protected EEO activity, i.e., his June 14, 2000 EEO complaint, and the USFS's decision to hire

someone else for the position in February 2001 was too far removed to establish a causal connection

by temporal proximity.  To establish causation based on a temporal proximity, Serrano must present

evidence justifying an inference of retaliatory motive, or in other words, Serrano must show that the

protected conduct was followed closely by an adverse action.  See Conner v. Schnuck Markets, Inc.,

121 F.3d at 1395.  Here the adverse action occurred in February 2001.  The protected activity

occurred on June 14, 2000.  This period is insufficient to establish the causation prong of the prima

facie case of retaliation.[5]  See Robbins v. Jefferson County Sch. Dist., 186 F.3d 1253, 1258-59 (10th

Cir. 1999)(finding that a nine-month delay was too remote to establish prima facie case)(citing

Conner v. Schnuck Markets, Inc., 121 F.3d at 1395); Richmond v. ONEOK, Inc., 120 F.3d 205, 209

(10th Cir. 1997)(finding that a three-month period by itself was insufficient to establish a causal

connection).  The decision is too remote in time -- without more -- to suggest that retaliatory reasons

motivated it.

    Serrano contends that the Defendant did not address the issue of causation concerning the

AFMO retaliation claim.  See Response to Motion for Summary Judgment at 19.  The Defendant did

address this issue.  The Defendant states:

    Plaintiff claims that he was not selected to fill the vacant AFMO position in retaliation

_____

    [5] Serrano, at the October 20 hearing, argued, for the first time that, an affidavit he filled out
in January 2001 constituted protected activity and, because it occurred less than one month before
his AFMO non-selection, temporal proximity is met.  See Transcript of Hearing at 36:19-37:4.
Serrano fails to provide any evidence that the recommending official was aware of this affidavit and
thus causal connection is not met.  See Williams v. Rice, 983 F.2d at 181 (10th Cir. 1993)("[P]laintiff
must show that the individual who took adverse action against him knew of the employee's protected
activity.").

-30-

> for having filed an EEO complaint in June 2000. Plaintiff's retaliation claim fails for the same reason cited above. The Forest Service's March 2001 decision to select Darroll Abeyta for the position is too far removed (9 months) from Plaintiff's prior EEO activity to suggest that the decision was motivated by unlawful retaliation. . . . In addition, Defendant has articulated legitimate, non-discriminatory reasons for hiring Abeyta, and Plaintiff has failed to demonstrate pretext.

Defendant's Memorandum in Support of Motion for Summary Judgment at 15. The Defendant here argues that Serrano did not establish causation. Serrano does not address in his Response the Defendant's above statement. See generally Response to Motion for Summary Judgment.

At the hearing, Serrano contended that, because Matarrese relied on the past allegation of sexual impropriety to influence his non-recommendation of Serrano to the Hotshot position, such knowledge and improper reliance can be imputed to the selecting officials for the AFMO position. See Transcript of Hearing at 28:10-19. The Court is not persuaded. Serrano has not pointed to any evidence on the record that the selecting officials for the AFMO position were aware of the past allegation of sexual impropriety, let alone that they relied on it or were influenced by it. Such a conclusory argument without more is insufficient to raise an inference of retaliation.

## B.   THE DEFENDANT HAS GIVEN A LEGITIMATE, NON-DISCRIMINATORY REASON FOR THE EMPLOYMENT ACTION CONCERNING THE AFMO POSITION.

In addition, the Defendant has articulated legitimate, non-discriminatory reasons for hiring Abeyta, and Serrano has not introduced evidence of pretext. On November 15, 2000, the USFS issued an announcement to fill a vacant AFMO position on the Española Ranger District. See Vacancy Announcement at 1. Serrano applied for the position. See Complaint ¶ 18, at 4. Seven or eight qualified candidates applied for the position. See Miera Aff. ¶ 8, at 2. Miera asked Joseph and Kellogg to review and rate all applications, using specific criteria derived from the amended Vacancy Announcement: (i) fire management program administration; (ii) knowledge of fire behavior operation

and ecology; (iii) fuels and prescribed program administration; (iv) knowledge of related fields such as range ecology; (v) supervision and training; (vi) inter-agency cooperation/interaction and participation; and (vii) resource team building.  See id. ¶¶ 7, 10, at 2.  Joseph and Kellogg rated Serrano in the top three finalists.  See Scoring Matrix at 1.  Abeyta was ranked first with 18+ points. See id.  Empey was ranked second with 14+ points, and Serrano was ranked third with 11 points. See id.  Abeyta received the highest point total.  See id.  Miera in turn ranked Abeyta and Empey first and second, respectively, with Serrano finishing a distant third.  See id. ¶ 12, at 3-4.  Miera recommended Abeyta for the position.  See id. ¶ 11, at 3.

Miera recommended Abeyta for the job for the following reasons, none of which are retaliatory: (i) he believed that Abeyta was more qualified for the position because Abeyta was currently managing a twenty-person fire-fighting crew; (ii) Abeyta was involved with other fire-fighting agencies as a Safety Officer and had demonstrated a willingness to take on a variety of assignments; (iii) Abeyta was a member of the Engine Academy, which worked with other agencies to develop standards and recommendations for firefighting; (iv) Abeyta frequently volunteered for assignments; and (v) Abeyta had better rapport and chemistry with people in the fire shop, and he was a better motivator, coordinator and communicator than Serrano.  See id. ¶ 11, at 2-3.  Atencio selected Abeyta for the position, concurring with Miera's recommendation.  See Atencio Aff. ¶ 13, at 3.

Similar to the Court's analysis of the legitimate and nondiscriminatory explanation under the discrimination claim concerning the Hotshot selection, the Defendant has offered legitimate and nondiscriminatory reason for the AFMO selection, and Serrano did not address the issue whether the explanations given by the Defendant were legitimate and nondiscriminatory in his Response.  See

generally Response to Motion for Summary Judgment.  The Court finds that the Defendant's reasons are clear and specific, legitimate, and nondiscriminatory, and thus, the Defendant has met its burden under the second prong of the McDonnell Douglas analysis.

**C.      SERRANO HAS NOT PRESENTED THE COURT WITH EVIDENCE OF PRETEXT.**

Serrano has not met his burden to show pretext.  Again, Serrano argues that his superior qualifications show pretext.  For the same reasons given in the pretext analysis under the discrimination claim for the Hotshot position, Serrano's contention fails.  Serrano does not present sufficient evidence that his qualifications are superior to those of Abeyta, let alone vastly superior such that the disparity is overwhelming, see Bullington v. United Air Lines, Inc., 186 F.3d at 1319; rather the only evidence he presents are the conclusory statements in his affidavits.  To support his contention, Serrano concludes, without supporting evidence, that Miera knew that Abeyta did not manage a twenty-person fire-fighting crew, and that Miera did not state his reasons why he thought Serrano lacked interpersonal skills.  He also argues that the fact that Abeyta completed the Technical Fire Management Course and had better interpersonal skills are subjective and irrelevant.  Again, Serrano misses the point.  First, Miera did not state that Serrano lacked interpersonal skills, but rather that Abeyta had better rapport and chemistry with people in the fire shop, and he was a better motivator, coordinator, and communicator than Serrano.  Serrano has pointed to no evidence suggesting that Miera was insincere in his belief that these factors were important to him and that he did not rely on them, nor has he pointed to any evidence that would show that Miera was insincere in his belief that Abeyta was the most qualified candidate for the position.  He has also not demonstrated to the Court, except with his own conclusory opinions, that he was more qualified.  The Court's role is not that of second guessing business judgments.  See Selenke v. Med. Imaging of

Colo., 248 F.3d at 1261.

Serrano also contends that Kevin Joseph, during the period of time he was actively pursuing his EEO claim of discrimination and retaliation for the non-selection of the Hotshot position, told him that he needed to "let Mr. Atencio know that what has passed is in the past."  Serrano asks the Court to take this statement, which has neither a specific date of reference nor any circumstances of reference, and speculatively conclude that this statement shows pretext for the alleged retaliation to the AFMO position.  The Court is unwilling to do so.  There is no frame of reference or context from which the Court can deduce what exactly was meant by this statement.  Additionally, speculation and conjecture are insufficient to show pretext to defeat a summary judgment motion.  See Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988).  The statement by Joseph could have several meanings.  For example, Mr. Atencio could have meant that he wanted to put everything in the past and move on.  Serrano does not proffer to the Court how he thinks the Court should interpret this statement, but only states, again in conclusory fashion, that this statement shows pretext. From the evidence in front of the Court concerning that statement, the Court can only speculate, which again is not sufficient to defeat summary judgment.  This statement, standing alone, does not present more than a scintilla of evidence, and thus Serrano has not met his burden of showing pretext, and he has presented no direct evidence of discrimination.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 252.

## III.   THE DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON SERRANO'S CLAIMS OF RETALIATION RELATING TO THE COYOTE RANGER DISTRICT DETAIL.

Serrano contends that the failure to give him time-in-grade credit at the GS-9 level for the duration of the detail was in retaliation for having filed his earlier EEO complaints.  Serrano's claim

of retaliation concerning the Coyote Ranger Detail fails because Serrano has not established a prima facie case of retaliation.

Serrano has not established a prima facie case of retaliation.  Again, at the hearing, Serrano contended that, because Matarrese relied on the past allegation of sexual impropriety to influence his non-recommendation of Serrano to the Hotshot position, such knowledge and reliance can be imputed to the officials involved in the Coyote Ranger Detail.  <u>See</u> Transcript of Hearing at 34:20-35:5.  The Court, again, is not persuaded.  Here Serrano has not pointed to any evidence on the record that the officials involved were aware of the past allegation of sexual impropriety, or that they relied on it or were influenced by it.  Again, such a conclusory argument, without more, is insufficient to raise an inference of retaliation.  Thus, the only evidence that Serrano presents showing a causal nexus appears to be temporal proximity.  The time frame between his protected EEO activity, <u>i.e.</u>, his June 14, 2001 EEO complaint, and the USFS's denial to give him time-in-grade credit at the GS-9 level for the duration of the second detail is almost five months -- assuming the adverse action occurred November 5, 2001.  This time frame standing alone is insufficient to establish causation.  <u>See</u> <u>Richmond v. ONEOK, Inc.</u>, 120 F.3d at 209 (finding that a three-month period by itself was insufficient to establish a causal connection); <u>Conner v. Schnuck Markets, Inc.</u>, 121 F.3d at 1395 ("In this case, however, the four month time lag between Conner's participation in protected activity and his termination by itself would not be sufficient to justify an inference of causation.").  Because Serrano cannot establish a prima facie case of retaliation, the Defendant is entitled to summary judgment on the retaliation claim relating to the Coyote Range Detail.

Because the Court finds that Serrano has not met his burden to show causation and thus has not established a prima facie case of retaliation, the Court will not address the issues of legitimate and

-35-

non-discriminatory explanations for denial, nor will the Court address whether Serrano has shown pretext for such explanations.

Because the Defendant has presented a legitimate, and facially nondiscriminatory explanation for the employment action relating to the Hotshot position, and Serrano has not shown pretext as to such explanation, the Defendant is entitled to summary judgment on the discrimination claim. Additionally, because Serrano has failed to establish a causal connection as to either retaliation claim, the Defendant is entitled to summary judgment on both retaliation claims. Even if Serrano had established a causal connection as to the AFMO retaliation claim, the Defendant has articulated legitimate and nondiscriminatory explanations for the employment action, and Serrano has not demonstrated pretext, and thus the Defendant would still be entitled to summary judgment on the AFMO retaliation claim.

**IT IS ORDERED** that the Defendant's Motion for Summary Judgment is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Dennis W. Montoya
Montoya Law Inc.
Rio Rancho New Mexico

    *Attorney for the Plaintiff*

David C. Iglesias
  United States Attorney for the
    District of New Mexico
Michael H. Hoses
Cynthia L Weisman
  Assistant United States Attorneys
    for the District of New Mexico
Albuquerque, New Mexico

     *Attorneys for the Defendant*